Filed 7/11/24  P. v. Carter CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

      Plaintiff and Respondent,

v.

ANTOINE CARTER,

      Defendant and Appellant.

E081731

(Super. Ct. No. FVI22003434)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Christopher S. Pallone, Judge.  Affirmed.

Brad J. Poore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel J. Hilton, and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I.

## INTRODUCTION

Defendant and appellant, Antoine Carter appeals a jury conviction for failing to register as a sex offender (Pen. Code, § 290.015[1]; count 1). He was acquitted of two other charges for resisting a peace officer and resisting an executive officer (counts 2 & 3). Defendant also suffered a prior strike (§§ 667, subds. (b)-(i), 1170.12), and the trial court found true three aggravating factors. The trial court sentenced defendant to four years in prison.

Defendant contends the trial court committed prejudicial error by finding that his Electronic Benefit Transfer (EBT) card records were not confidential or privileged, and allowing them to be admitted into evidence. Defendant also contends that the trial court erred in finding that his prior Pennsylvania conviction was the equivalent of a California section 288, subdivision (a)[2] conviction. We reject defendant's contentions and affirm the judgment.

## II.

## FACTS

On May 13, 2014, in a Pennsylvania state court, defendant pled no contest to the charge of indecent assault of a person less than 13 years of age (18 Pa.C.S.A. § 3126,

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

[2] We refer herein to section 288, subdivision (a) as section 288(a) herein.

2

subd. (a)(7)).[3] Defendant was advised at the hearing that throughout his lifetime he was required to register as a sex offender upon establishing residency in a new state.

On August 3, 2022, during defendant's plea of no contest to violating section 594, subdivision (b)(1) (vandalism), the trial court in Victorville, California, told defendant that, under the lifetime registration requirement imposed for his Pennsylvania conviction, he must notify law enforcement in California of his new residence if he remained in California. San Bernardino County Sheriff's Deputy Fincel was present in the courtroom at the Victorville courthouse that day, and heard the court tell defendant he would have to register as a sex offender.

Deputy Fincel saw defendant the next day unsuccessfully attempting to retrieve his car from the Victorville police station impound lot. Defendant was told his car was not in the police impound lot. It had been towed elsewhere in the city. While defendant was at the Victorville police station on August 4, 2022, he did not register as a sex offender.

On August 12, 2022, defendant called the Sacramento County Department of Human Assistance (SCDHA) and spoke to a call center representative who answered Medi-Cal and CalFresh eligibility questions. Defendant told the representative he was in San Bernardino and that his EBT card had been taken from his car when it was towed. The SCDHA representative told defendant he was required to pick up his new EBT card

---

[3] We refer herein to Pennsylvania Crimes Code section 3126, subdivision (a)(7) as PA section 3126 (a)(7).

in person, in the county where he was residing.  He was told that if he picked up his EBT card in San Bernardino, he had to be residing there because a county cannot issue an EBT card unless the recipient resides in that county.

On August 15, 2022, defendant told an SCDHA service center representative that he had been told to call the service center to have his benefits transferred to his new EBT card.  Defendant provided the representative with a new address in San Bernardino County.  The representative noticed that defendant's account in Sacramento County had already been closed, and realized the reason it was closed was because his account was transferred to Victorville in San Bernardino County.

EBT records for defendant showed he used his EBT card in Victorville on August 15, 16, 17, 18, 21, 23, 25, and 27.  The August 18 and 25, 2022, EBT transactions took place at an Adelanto Stater Brothers market, and a video and photographs showed defendant using his EBT card on August 25, 2022, at the market.

On September 9, 2022, Deputy Fincel saw defendant at the Victorville courthouse. Before going to the courthouse, Deputy Fincel checked the California Sex and Arson Registry (CSAR), which showed that defendant had not registered with any agency in the state as a sex offender, including in San Bernardino County.  Deputy Fincel therefore detained, arrested, and searched him for failure to register as a sex offender.  During a search incident to arrest, Deputy Fincel found in defendant's pocket an EBT card with his name on it.

4

On September 12, 2022, an office specialist at the San Bernadino County Sheriff's Department checked the CSAR database and confirmed that defendant had not registered with any agency in California as a sex offender.

III.

PROCEDURAL BACKGROUND

On November 8, 2022, Deputy Fincel obtained a search warrant seeking information and records from SCDHA regarding defendant's EBT records and transactions from August 3, 2022, through September 9, 2022.  In response to the warrant request, SCDHA provided some of the requested documents regarding defendant.

On November 29, 2022, the district attorney filed a felony complaint against defendant, alleging (1) failure to register as a sex offender (§ 290.015, subd. (a); count 1); (2) resisting a peace officer (§ 148, subd. (a)(1); count 2); and (3) resisting an executive officer (§ 69; count 2).  The complaint also alleged defendant suffered a prior strike (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), and various aggravating factors.

At the arraignment hearing on November 29, 2022, SCDHA submitted to the trial court subpoenaed SCDHA records of defendant's EBT transactions.  Also on November 29, 2022, the trial court ordered that subpoenaed documents from the Pennsylvania State Police on defendant's prior criminal strike case be transferred to the trial court in the instant case.

On December 1, 2022, defendant filed a motion to suppress evidence (§ 1538.5 and 4th Amend), including photographs and videos, obtained during and after his

detention and arrest, and all evidence supporting the charges against him. Defendant specifically requested suppressed his EBT card found in his pocket and any other items found on defendant after his detention; all evidence collected by law enforcement "about the alleged usage, status, and other events associated with the EBT benefit card located in [his] clothes pocket"; and surveillance footage, photos, and witness statements collected from Stater Brothers. Defendant argued he was detained by law enforcement on September 9, 2022, without a warrant and without a reasonable suspicion. The People filed opposition to defendant's motion to suppress evidence.

At a hearing on December 12, 2022, the trial court received the subpoenaed records from the Pennsylvania State Police. Defendant objected to the documents based on lack of foundation, hearsay, and authentication grounds. The trial court also opened the subpoenaed documents from the SCDHA and reserved for ruling later on SCDHA's claim of confidentiality of the EBT documents, upon SCDHA and or defendant filing a proper motion to quash.

After conducting the preliminary hearing that same day and the following day, the court held defendant to answer the complaint charges, and an information was filed, alleging the same charges stated in the felony complaint.

On December 14, 2022, SCDHA filed a Claim of Confidentiality Regarding Subpoena Duces Tecum (Claim of Confidentiality), objecting on behalf of defendant to SCDHA producing his records because they were confidential and privileged (Welf. &

Inst. Code, §§ 10850, 14100.2, subd. (a)), and subject to protection under defendant's right to privacy (Cal. Const., art. 1, § 1).

The People filed opposition to the SCDHA's Claim of Confidentiality of defendant's social service records, including the EBT transaction records. The People argued the claim had been waived by disclosure of the documents. SCDHA had twice disclosed the contents of the records to law enforcement. An SCDHA investigator told Deputy Fincel about the contents of defendant's EBT records, regarding defendant's use of his EBT card in San Bernardino County between August 3, and August 27, 2022. Deputy Fincel also was told there was a note that said defendant called SCDHA and stated that he was a transient living in San Bernardino County and therefore needed a new EBT card forwarded to San Bernardino County.

On January 6, 2023, the trial court heard SCDHA's Claim of Confidentiality, and defendant joined in the motion. The court stated it had reviewed everything submitted and noted that SCDHA's Claim of Confidentiality was not a proper motion to quash. The court nevertheless heard the matter and concluded the issue was whether the law enforcement exception applied under Welfare and Institutions section 10850.[4] The court further stated that, by talking to SCDHA, defendant made SCDHA employees witnesses and that the information in the documents produced contained very little information subject to any privacy interest. The court therefore denied the Claim of Confidentiality

---

[4] The court incorrectly cited subdivision (k) of Welfare and Institutions section 10850, as the law enforcement section. The correct subdivision of the exception is subdivision (i).

and ordered the release of defendant's SCDHA EBT records to the People to copy, with copies also provided to the defense.

At defendant's trial in March 2023, during an Evidence Code section 402 hearing (402 hearing), defendant objected to the admissibility of the SCDHA EBT records on the ground of lack of foundation and under Evidence Code section 352. The court overruled defendant's objection, concluding the evidence was relevant to an element of the charge and the probative value outweighed any prejudice. During the trial, a SCDHA investigator testified that he reviewed defendant's EBT records and, in response to the district attorney's subpoena, produced copies of documents showing defendant's EBT card transaction history from August 3, 2022, through September 9, 2022.

IV.

FORFEITURE OF OBJECTION TO EBT RECORDS

The People contend that defendant forfeited his objection to the trial court's release to the prosecution of his SCDHA EBT records and admission of the documents at trial. The People note it is important to distinguish between the EBT records received under the search warrant and the EBT records received from the subpoena. The People argue that defendant failed to interject a timely and specific objection to the EBT documents introduced at trial.

As a general rule a defendant may not object on appeal to evidence unless done so in a timely fashion and on the same ground. (*People v. Hill* (1998) 17 Cal.4th 800, 820.)

"A defendant will be excused from the necessity of . . . a timely objection . . . if [it] would be futile. [Citations.]" (*Ibid.*)

The People assert several reasons why defendant has failed to preserve his challenge on appeal. First, citing *People v. Gillard* (1997) 57 Cal.App.4th 136, 164, defendant never moved to suppress the EBT records obtained through the search warrant. On November 8, 2022, Deputy Fincel obtained a search warrant seeking to obtain SCDHA records of defendant's EBT transactions from August 3, 2022, to September 9, 2022. The People assert that, because there was no objection to the search warrant and defendant did not file a motion to suppress the seized documents under the warrant, he forfeited his objection to production and admission at trial of his EBT records.

But, as defendant argues, there was no forfeiture because on January 6, 2023, he joined SCDHA's Claim of Confidentiality motion objecting to SCDHA producing defendant's subpoenaed records on the grounds they were confidential and privileged (Welf. & Inst. Code, §§ 10850, 14100.2, subd. (a)), and subject to protection under defendant's right to privacy (Cal. Const., art. 1, § 1). Although the Claim of Confidentiality motion was not a proper motion to quash the EBT records obtained under Deputy Fincel's warrant, the Claim of Confidentiality challenged essentially the same type of EBT records requested in the People's subpoena seeking production of the documents at trial. On this record, we conclude any additional attempts to object to the EBT records would have been futile. Defendant was not required to raise a futile objection. (*People v. Hill*, *supra*, 17 Cal.4th at pp. 820-821.)

9

This case is distinguishable from *Gillard*, cited by the People for the proposition defendant forfeited any challenge to EBT records, because he never moved to suppress the EBT records obtained through the search warrant served on SCDHA. In *Gillard*, the court held that the defendant's inaction waived any privilege that might have been attached to the seized materials. But, here, defendant joined SCDHA in objecting to the release of the subpoenaed EBT records, which included the EBT records obtained from SCDHA through the warrant.

Defendant's objections and the trial court's rulings rejecting his objections to the EBT records during the January 6, 2023, hearing on the Claim of Confidentiality motion, and during the March 2, 2023, 402 hearing, sufficiently preserved defendant's privilege objection to the EBT records. He was not required to assert the objection again when the trial court had already clearly rejected it, and raising it again would likely have been futile. (See *People v. Yeoman* (2003) 31 Cal.4th 93, 117.)

As explained in *People v. Morris* (1991) 53 Cal.3d 152, 190, an objection at the time the evidence is offered serves to focus the issue and to protect the record, but an unsuccessful motion in limine can serve the same purpose as an objection at trial in preserving the record on appeal. Here, SCDHA and defendant objected to the EBT records two months before the trial, and then defendant again objected to the EBT records in March 2023, at the beginning of the trial during a 402 hearing. Although at the 402 hearing, defendant objected to the documents based only on lack of foundation and under Evidence Code section 352, defendant could have reasonably concluded that it was

futile to reassert the privilege and confidentiality grounds, because the court had already rejected them during the January 6, 2023, hearing.

Defendant alternatively objects that the law enforcement exception under Welfare and Institution section 10850, subdivision (i) does not apply, and even if it does, the exception limits disclosure from the EBT records, to only defendant's name, physical description, and address.

The law enforcement exception, under subdivision (i) of Welfare and Institution section 10850, provides in relevant part: "This section does not prohibit an employee of a county welfare department from disclosing confidential information concerning a public social services applicant or recipient to a state or local law enforcement agency investigating or gathering information regarding a criminal act committed in a welfare department office, a criminal act against a county or state welfare worker, or a criminal act witnessed by a county or state welfare worker while involved in the administration of public social services at any location. . . .  Disclosure of confidential information pursuant to this subdivision shall be limited to the applicant's or recipient's name, physical description, and address."  This provision does not appear to be applicable here, where law enforcement and the district attorney requested defendant's EBT records by warrant and subpoena, for the purpose of investigating the criminal offense of failing to register as a sex offender.

Regardless, we conclude defendant adequately objected to the EBT records on the ground they were privileged and confidential under Welfare and Institutions Code section

11

10850. He was not also required to separately object to the disclosure of specific information contained in the EBT records.

We conclude defendant did not forfeit his objection to the trial court admitting into evidence his EBT records and therefore will address it on the merits.

V.

HARMLESS ERROR ALLOWING EBT RECORDS

We reject defendant's contention that the trial court prejudicially erred by allowing the prosecution to introduce into evidence defendant's EBT records for the purpose of establishing he failed to timely register as a sex offender. Regardless of whether the trial court erred in ruling the EBT records were admissible because they were not privileged or confidential, any such error was harmless. Even in the absence of the EBT records, there was other strong, supporting evidence establishing that defendant failed to register as a sex offender while residing in San Bernardino County.

The *Watson* harmless error standard applies here (*People v. Watson* (1956) 46 Cal.2d 818). "[T]he *Watson* test for harmless error 'focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration. In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result.'" (*People v. Beltran* (2013) 56 Cal.4th 935, 956.) Under this standard, erroneous

12

admission of the EBT records evidence would be prejudicial if it is reasonably probable that, absent the error, a result more favorable to the defendant would have been reached. (*People v. Winkler* (2020) 56 Cal.App.5th 1102, 1164.)

Here, there was strong evidence, apart from the EBT records, establishing that defendant's residence was in San Bernardino County, and therefore he failed to timely register there, in violation of section 290.011. Such highly persuasive evidence of defendant's residence includes Deputy Fincel's testimony that he saw defendant at the Victorville courthouse, in San Bernardino County, on August 3, 2022, during his plea of no contest in an unrelated vandalism case. Deputy Fincel heard the sentencing court and deputy district attorney tell defendant that he must register within five days of his release from custody that day. Deputy Fincel further testified that between August 3, 2022, and September 9, 2022, Deputy Fincel saw defendant again several times. Deputy Fincel saw defendant on August 4, 2022, at the Victorville police station, attempting to retrieve his car from the police impound. He was unsuccessful because his car was not there.

Deputy Fincel also testified that, before going to the courthouse on September 9, 2022, he checked the CSAR and found that defendant had not registered with any agency in the state as a sex offender, or with San Bernardino County or any other county in California. Therefore, when Deputy Fincel saw defendant at the Victorville courthouse on September 9, 2022, Deputy Fincel arrested and searched defendant for failure to register as a sex offender. During the search, Deputy Fincel found in defendant's pocket an EBT card with his name on it.

13

Additional evidence of defendant residing in San Bernardino County included a SCDHA call center representative's testimony that defendant called on August 12, 2022, and told her he was in San Bernardino and that his EBT card had been taken from his car when it was towed. The SCDHA representative told defendant he was required to pick up his new EBT card in person, in the county where he was residing. Therefore, if he picked up his EBT card in San Bernardino, he had to be residing there, because a county cannot issue an EBT card unless the recipient resides in that county.

Another SCDHA service center representative testified that on August 15, 2022, defendant told her that he had been told to call the service center to have his benefits transferred to his new EBT card. Defendant provided the representative with a new address in San Bernardino County. The representative noticed that defendant's previous account in Sacramento County had already been closed because his account was transferred to Victorville in San Bernardino County.

In addition, a Stater Brothers employee, who was in charge of investigations for Stater Brothers, produced at trial photographs and a video, showing defendant on August 25, 2022, using his EBT card at an Adelanto Stater Brothers market.

We conclude that the evidence summarized above established that, upon defendant's release from custody on August 3, 2022, he remained in San Bernardino County up until his arrest on September 9, 2022. Even had the EBT transaction records not been introduced at trial, it is highly likely the jury would have nevertheless found based on the other evidence that defendant was residing in San Bernardino County

14

between August 3 and September 9, 2022. Therefore, even if the court erred in admitting into evidence the EBT records, there was no prejudicial error because the trial outcome would have been the same had the records been excluded. (*People v. Watson*, *supra*, 46 Cal.2d at p. 836.)

## VI.

## PENNSYLVANIA CONVICTION STRIKE

In a bifurcated bench trial, the trial court found true the allegation that defendant's 2014 Pennsylvania conviction for violating PA section 3126 (a)(7) constituted a prior strike (§ 667, subd. (d)(2)). Defendant argues that his Pennsylvania conviction does not include all of the elements of a section 288(a) offense, and therefore the Pennsylvania prior conviction does not qualify as a strike. We disagree.

During a bifurcated trial, the trial court in this case ruled that "defendant is the same defendant listed as Antoine Carter, Jr. in the certified court packet and finds as well, after having reviewed the statute and the standard criminal jury instruction for that offense, the Pennsylvania conviction is equivalent to . . . [s]ection 288(a), and, therefore, [the court] finds the prior strike convictions true." The court then sentenced defendant to the middle term of two years, doubled to four years for the prior strike.

"Under our sentencing laws, foreign convictions may qualify as serious felonies, with all the attendant consequences for sentencing, if they satisfy certain conditions. For a prior felony conviction from another jurisdiction to support a serious-felony sentence enhancement, the out-of-state crime must 'include[] all of the elements of any serious

felony' in California. (§ 667, subd. (a)(1).) For an out-of-state conviction to render a criminal offender eligible for sentencing under the three strikes law (§§ 667, subds. (b)-(i), 1170.12), the foreign crime (1) must be such that, 'if committed in California, [it would be] punishable by imprisonment in the state prison' (§§ 667, subd. (d)(2), 1170.12, subd. (b)(2)), and (2) must 'include[] all of the elements of the particular felony as defined in' section 1192.7(c) (§§ 667, subd. (d)(2), 1170.12, subd. (b)(2))." (*People v. Warner* (2006) 39 Cal.4th 548, 552-53) "A criminal offender may also be sentenced under the three strikes law if he or she has a prior conviction for a 'violent felony,' as defined in section 667.5, subdivision (c). (§§ 667, subd. (d)(2), 1170.12, subd. (b)(2).)" (*People v. Warner*, *supra*, 39 Cal.4th at p. 553, fn. 3.)

Here, we must determine whether the trial court erred in finding that a violation of PA section 3126 (a)(7) (indecent assault of a child) is the equivalent of a section 288(a) violation (lewd or lascivious acts). PA section 3126 provides: "**(a) Offense defined.**—A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant" and "the complainant is less than 13 years of age." (PA § 3126, subd. (a)(7).)

The Pennsylvania criminal jury instruction 15.3126, applicable to defendant's prior conviction states in relevant part: ". . . To find the defendant guilty of this offense, you must find . . . [¶] *First*, that . . . the defendant had indecent contact with [the victim]

16

or caused [the victim] to have indecent contact with [the defendant] . . . ," or "the defendant intentionally caused [the victim] to come into contact with seminal fluid, urine, or feces," and this contact was committed "for the purpose of arousing sexual desire in the defendant or [the victim]"; and "*Second*, that [the victim] was less than 13 years old." (PA-JICRIM 15.3126C.)

The jury instruction further explains that to prove that the defendant had indecent contact with the alleged victim or caused the alleged victim to have indecent contact with the defendant, the prosecutor "must prove that the defendant brought about a touching of the sexual or other intimate parts of the body of one of them by the other, and that the defendant did so for the purpose of arousing or gratifying [his] [her] own or the victim's sexual desire. Contact may be indecent even though the clothing of a defendant or a victim prevents their flesh from touching." (PA-JICRIM 15.3126C.) As to the alternative type of contact, the jury instruction states the prosecutor must prove that "[a] defendant intentionally causes someone to come into contact with seminal fluid, urine, or feces for the purpose of arousing sexual desire in the defendant or the other person when it is his or her conscious object to do so."

The California statute, section 288(a), which the People argue is the functional equivalent of the Pennsylvania statute, PA section 3126 (a)(7), provides: "Except as provided in subdivision (i), a person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of

17

14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years."  (§ 288(a).)

The applicable California criminal jury instruction for this offense, CALCRIM No. 1110, states that, to prove that the defendant is guilty of violating section 288(a), the People must prove (1) either "[t]he defendant willfully touched any part of a child's body either on the bare skin or through the clothing" or, alternatively, "[t]he defendant willfully caused a child to touch (his/her) own body, the defendant's body, or the body of someone else, either on the bare skin or through the clothing," (2) "[t]he defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of [the defendant] or the child," and (3) "[t]he child was under the age of 14 years at the time of the act."  (CALCRIM No. 1110.)

CALCRIM No. 1110 further states that "[s]omeone commits an act *willfully* when he or she does it willingly or on purpose.  It is not required that he or she intend to break the law, hurt someone else, or gain any advantage."  In addition, "Actually arousing, appealing to, or gratifying the lust, passions, or sexual desires of the perpetrator or the child is not required."  (CALCRIM No. 1110.)

Even though the Pennsylvania statute differs from the California statute in that the victim must be under the age of 13, rather than 14, this difference is not significant here, because the Pennsylvania statute in this respect is more restrictive than the California statute.

18

Defendant argues the trial court erred in ruling section 288(a) is the equivalent of PA section 3126 (a)(7). Defendant asserts that PA section 3126 (a)(7) is broader than section 288(a), and thus the offenses do not have the same elements, because a defendant can be convicted of violating PA section 3126 (a)(7) by intentionally causing a child to come into contact with the defendant's seminal fluid, urine, or feces. Section 288(a), on the other hand, is limited to the defendant willfully touching a child's body, or the defendant willfully causing a child to touch the child's own body or the defendant's body, or the body of someone else. The People argue that under *People v. Pitts* (1990) 223 Cal.App.3d 606 (*Pitts*), section 288(a) encompasses the conduct described in PA section 3126 (a)(7), of the defendant intentionally causing a child to come into contact with the defendant's seminal fluid, urine, or feces.

In *Pitts*, the defendants ordered the child victims to drink their urine during an orgy. The defendants argued that section 288 does not contemplate the drinking of urine. Therefore there was insufficient evidence to sustain their convictions for violating section 288, subdivision (b) based on such acts. The argument was two-pronged: "urine drinking does not constitute a lewd act, and it does not involve a touching." (*Pitts*, *supra*, 223 Cal.App.3d at p. 886.)

Even though *Pitts*, *supra*, 223 Cal.App.3d 606, involves convictions for violating subdivision (b) of section 288, rather than subdivision (a), *Pitts* is nevertheless applicable here to the issue of whether the elements of section 288(a) and PA section 3126 (a)(7) are equivalent. A violation of subdivision (b) of section 288 requires the same elements as a

19

subdivision (a) violation, but also requires the additional element that the defendant committed "an act described in subdivision (a) by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person." (§ 288, subd. (b)(1).)

*Pitts* addressed whether urine drinking constitutes a lewd act and involves touching within the meaning of subdivision (a) of section 288. The *Pitts* court held that section 288, subdivision (b) encompasses the act of inducing a child to drink urine. (*Pitts*, *supra*, 223 Cal.App.3d at p. 890.) The *Pitts* court explained that taking into consideration the surrounding circumstances of the offenses, the defendants' acts of instructing the children to drink urine constituted acts done with a lewd intent, which the jury could reasonably find were performed to arouse, appeal to, or gratify the lust, passions, or sexual desires of the defendants. (*Id*. at p. 888.)

The *Pitts* court further addressed the issue of whether the "touching" requirement had been met. The court explained that "'a touching is required to commit a felonious section 288 lewd act.' [Citation.] Defendants argue that here there was no physical touching between the bodies of themselves and the victims, nor was there a physical touching of the victim's body by the victim. Since the only contact shown was between the victim's mouth and a drinking vessel, the argument runs, there was insufficient evidence to show a violation of section 288. Respondent counters that a touching occurred because the bodily fluid of a coconspirator touched the lips, mouths, and digestive systems of the victims." (*Pitts*, *supra*, 223 Cal.App.3d at p. 889.)

20

In concluding that the defendants' act of instructing the victims to drink urine constituted a touching, the *Pitts* court noted that "[i]t is settled that the private parts of the victim's body need not be touched in order to sustain a section 288 conviction. [Citation.] . . . [¶] In *People v. Austin* [1980] 111 Cal.App.3d 110, this court upheld a section 288 conviction where the defendant did not touch the victim but had her pull down her own panties. While noting the need for a touching, we observed that the act of removing panties was such that the hands of the one doing the removing came in contact with the body of the child. (*People v. Austin*, *supra*, at pp. 113-114.) In *Austin,* the defendant caused the victim to physically touch her own person, and his intent was inferable from his conduct. [Citation.] We held that the touching necessary for a section 288 violation may be done by the child victim on his or her own person provided it is done at the instigation of a person who had the required specific intent. [Citation.] We noted that at common law, one who caused a crime to be committed by an innocent agent was deemed guilty of the crime as a principal . . . ." (*Pitts*, *supra*, 223 Cal.App.3d at p. 889.)

The *Pitts* court further stated that the touching requirement could be satisfied, not only by the child's touching his or her own person at the instigation of one having the requisite specific intent, but also based on the theory "that a child's touching of its own genitalia at defendant's instigation constituted a 'constructive touching' by defendant himself." (*Pitts*, *supra*, 223 Cal.App.3d at p. 890.) The *Pitts* court thus concluded that "compelling a child to drink urine from a cup or bottle is a sufficient 'touching' to

21

constitute a violation of section 288. Under the facts at hand, these were lewd acts committed 'upon or with' at least the mouths of the children. If a defendant lewdly touched a child with an object rather than with some part of that defendant's body, it would in our view be no less a violation of section 288. Since the requisite touching can be done by the child himself, the presence or absence of an object (here, the cup or bottle) seems to us to be immaterial." (*Ibid.*)

Defendant argues that *Pitts*, *supra*, 223 Cal.App.3d 606, is not on point because the facts differ from those in the instant case. Defendant also argues the People have not cited any case in which the court holds that a defendant can be convicted of violating section 288(a) by causing a child to come into contact with seminal fluid, urine, or feces for the purpose of arousing sexual desire. Defendant therefore maintains that the case should be remanded to the trial court to establish the factual basis of his Pennsylvania prior conviction.

We are not persuaded by defendant's arguments here that PA section 3126 (a)(7) is not the equivalent of section 288(a) for purposes of defendant's Pennsylvania conviction qualifying as a strike. Regardless of this case differing factually from *Pitts*, *Pitts* supports the proposition that section 288(a) is the functional equivalent of PA section 3126 (a)(7) for purposes of applying the Three Strikes law to defendant's Pennsylvania prior, because *Pitts* holds that section 288(a) can be violated, like PA section 3126 (a)(7), when a defendant causes a child to come into contact with seminal fluid, urine, or feces for the purpose of arousing sexual desire in the defendant or the

child.  The elements of both statutes are thus the same.  Therefore the trial court did not err in finding that the Pennsylvania prior qualified as a strike under California's Three Strike law.

## VII.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>CODRINGTON</u>

J.

We concur:

<u>RAMIREZ</u>

P. J.

<u>MILLER</u>

J.